SAGE INFORMATION SERVICES *et al.*, Plaintiffs-Appellants, v. GARY A. KING, Du Page County Clerk, Defendant-Appellee.

Second District   No. 2—07—1262

Opinion filed May 29, 2009.

Donald M. Craven, of Donald M. Craven, P.C., of Springfield, for appellants.

Joseph E. Birkett, State's Attorney, of Wheaton (Lisa Anne Hoffman, Anna B. Harkins, and Nancy J. Wolfe, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

Plaintiffs, Sage Information Services and Roger W. Hurlbert (Sage), filed a one-count complaint against defendant, Gary A. King,

Du Page County Clerk, seeking relief from a denial of an Illinois Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2006)) request. Sage alleged that the fee to be charged by defendant for copying a database compilation of the entire real property assessments for Du Page County exceeded the actual cost of copying as provided by the FOIA and should be deemed a denial of the request. Defendant filed a motion to dismiss pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2006)), arguing that, rather than the actual cost of reproduction under the FOIA, the fee provisions of sections 9—20 and 14—30 of the Illinois Property Tax Code (35 ILCS 200/9—20, 14—30 (West 2006)), in conjunction with Du Page County Board Resolution FI—0002—02 (December 11, 2001), control what is to be charged for the assessment records Sage sought. Sage responded that section 5—1106.1 of the Counties Code (55 ILCS 5/5—1106.1 (West 2006)) is more specific than the Property Tax Code, as it governs Internet access of bulk electronic data, which is precisely what Sage requested, and therefore its fee provision should control.

The trial court found that Sage's claim fell within the more specific provisions of the Property Tax Code, in conjunction with Resolution FI—0002—02, and that the $5,500 copying fee that defendant wanted to charge Sage was reasonable.

Sage appeals, contending that (1) the $5,500 fee to be charged exceeds the cost of electronic reproduction, as contemplated by section 6(a) of the FOIA; (2) none of the provisions of the Property Tax Code apply; (3) section 5—1106.1 of the Counties Code specifically applies to bulk Internet access, which Sage seeks, and therefore its fee provision should apply; (4) the trial court's determination cuts against the public policy considerations of the FOIA; and (5) the trial court erred in considering a material and genuine question of fact when it determined that the charge of $5,500 was reasonable. For the reasons that follow, we reverse and remand.

## BACKGROUND

On December 7, 2006, Sage sent a letter to the Du Page County supervisor of assessments, requesting a copy on compact disc (CD), or similar electronic media including through e-mail transmission, of the current real property assessment file for the entire Du Page County pursuant to the FOIA. Sage specifically requested "data such as parcel number, township, area code, property class, homesite acres, parcel status, ownership information, valuations, and exceptions, short legal description, situs address, any available sale information, and any building characteristic data (square footage, year built, number of bathrooms, roof type, and so further)." Sage sought an "as is" or

"electronic Xerox" of the file, "without the need to make selective extracts." Sage requested "[a] database format capable of being sorted and manipulated (fixed length filed, spreadsheet, etc.)." Sage agreed to pay actual costs for copying the data.

On December 14, 2006, defendant replied that the data requested was "only available in raw data form" and that Sage needed to format it. Defendant further responded that Sage would need to provide three IBM 3490 cartridges along with a payment of $5,500.

On April 9, 2007, Sage requested that defendant reconsider the imposition of the fee and assess a fee relative to the actual cost of reproduction as contemplated by the FOIA. Sage did not believe that the actual cost of reproducing data electronically was close to $5,500, because the cost of copying electronic records was much less than the cost associated with copying paper records. Sage asserted that the legislature has determined the cost of production of voter files by local election authorities for electronic transmission to the State Board of Elections to be $0.00034 per voter record. Sage stated that voter files in surrounding counties are available for less than $100 and that the cost of copying electoral records is much less than the cost associated with paper records.

On May 2, 2007, defendant sent a second letter denying Sage's request. Defendant alleged that the materials Sage requested were exempt under section 1 of the FOIA, based on "Private Gain" and "GIS Information" (geographical informational systems).[1] Defendant also alleged that Resolution FI—0002—02 establishes fees for the information that Sage sought. Defendant enclosed a copy of the resolution with his response and informed Sage that "[t]his office provides this information annually to many clients nationwide." The resolution establishes the county's uniform rate schedule for real estate database products. Section D(1)(b) of the resolution assesses a flat rate of $5,500 for the entire Du Page County real estate database listing.

Sage filed a one-count complaint against defendant, seeking a court order directing defendant to release the information it sought pursuant to the FOIA, "at a cost not to exceed the actual cost of reproduction, as contemplated by law." Sage alleged that, after the

---

[1]In its section 2—619 motion to dismiss, defendant did not argue that Sage's complaint should be dismissed because the information Sage sought was exempt from disclosure under section 1 of the FOIA. The argument would have been baseless because section 1 is simply a declaration of policy or preamble and, as such, is not part of the Act itself and has no substantive legal force. *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 412-13 (1997).

initial $5,500 copying charge, defendant assessed "a new copying charge under GIS information, which amounted to more than the original copying charge."[2]

Defendant filed a section 2—619 motion to dismiss. Defendant argued that the production of the records sought by Sage is governed by the more specific provisions of sections 9—20 and 14—30 of the Property Tax Code, which concern property tax assessment records and contain their own fee provisions. Defendant also argued that the Du Page County Board under Resolution FI—0002—02 established a reasonable fee of $5,500 for purchasing a copy of the entire real estate database product.

Following oral argument, the trial court granted defendant's motion to dismiss. In its memorandum opinion, the court found that Resolution FI—0002—02, in conjunction with the Property Tax Code, was far more specific than the FOIA regarding the fees that could be charged and thus was the controlling statute. The trial court commented that section 14—30 of the Property Tax Code provides a copying expense of 35 cents per page, "which would take the expense far over $100,000" because there are over 325,000 real estate assessment parcels in Du Page County. However, the court found that Resolution FI—0002—02, which charges a flat fee of $5,500, was exceptionally reasonable; the charge was less than what would be authorized, and "this Court specifically finds that charge to be reasonable, appropriate and far from limiting, prohibitive or oppressive[,] which would lead this Court to presume or find any limitations to the reasonable person of obtaining copies of those documents that had been requested."

Sage filed a timely notice of appeal, contending that the trial court erroneously granted the section 2—619(a)(9) motion to dismiss and seeking an order to grant it access to the records at the cost established by section 5—1106.1(c) of the Counties Code.

## ANALYSIS

Sage's complaint is based on the provisions of the FOIA and seeks production of all of Du Page County's real property assessment data on a CD or other electronic format at the cost set forth in section 6(a) of the FOIA. Sage maintains that the minimum $5,500 fee, which the county wishes to charge to reproduce, exceeds the cost of electronic reproduction as contemplated by section 6(a) of the FOIA. Sage further

---

[2]Although Sage states in its complaint and in its appeal that defendant assessed a new copying charge under "GIS information," which amounted to more than the original charge assessed, nowhere in the record is there an exhibit in which defendant assessed a charge above $5,500 for copying the data requested by Sage.

maintains that section 5—1106.1 of the Counties Code, which applies to the type of Internet access of bulk or compiled records that Sage seeks, provides an "alternative to the FOIA default of [those] costs associated with the actual cost of reproduction."

During oral argument before this court, defendant agreed with Sage that there is no conflict *per se* between the FOIA and the other statutes involved in the case; rather, the dispute involves how much the county may charge for the records Sage seeks. Defendant noted that the FOIA provides that the county can charge no more than its actual cost for reproducing public records, unless another statute provides otherwise. Defendant argued that, under sections 9—20 and 14—30 of the Property Tax Code, which specifically apply to property tax assessments, the General Assembly has allowed the county to charge different fees for reproducing the particular data Sage sought.

### 1. Standard of Review and Fundamental Rules of Statutory Construction

Our standard of review following a dismissal under section 2—619 is well settled. "The purpose of a section 2—619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). Section 2—619(a)(9) authorizes involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 2006). Affirmative matter is something in the nature of a defense that negates the cause of action completely. *Van Meter*, 207 Ill. 2d at 367. The party bringing a section 2—619 motion to dismiss admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter to defeat the plaintiff's claim. *Van Meter*, 207 Ill. 2d at 367. In ruling on such a motion, the court must interpret the pleadings and supporting documents in the light most favorable to the nonmoving party. *Van Meter*, 207 Ill. 2d at 367-68. Our review of a trial court order granting a motion to dismiss under section 2—619 is *de novo*. *Van Meter*, 207 Ill. 2d at 368.

The controlling principles of statutory construction also are well settled. In construing a legislative enactment, a court should ascertain and give effect to the overall intent of the drafters. *Villegas v. Board of Fire & Police Commissioners*, 167 Ill. 2d 108, 123 (1995). The most reliable indicator of intent is the language used, which must be given its plain and ordinary meaning. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002). A court presumes that the legislature intended that two or more statutes that relate to the same subject are to be read harmoniously so that no provisions are rendered inoperative. *Henrich v. Liber-*

*tyville High School*, 186 Ill. 2d 381, 391-92 (1998). Statutes relating to the same subject must be compared and construed with reference to each other so that effect may be given to all of the provisions of each if possible. *Henrich*, 186 Ill. 2d at 392. However, when there is a general statutory provision and a specific statutory provision, either in the same or in another act, that both relate to the same subject, the specific provision controls and should be applied. *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002). We now turn to the provisions that are at issue.

## 2. The FOIA

■ Sage seeks production of the county's real property assessment data on electronic format at the cost set forth in section 6(a) of the FOIA, and it maintains that the minimum $5,500 fee, which the county wishes to charge to reproduce, exceeds the actual cost of electronic reproduction as contemplated by section 6(a) of the FOIA. Section 6(a) grants public bodies the authority to charge fees for reproducing and certifying public records. It provides:

> "Each public body may charge fees reasonably calculated to reimburse its actual cost for reproducing and certifying public records and for the use, by any person, of the equipment of the public body to copy records. Such fees shall exclude the costs of any search for and review of the record, and shall not exceed the actual cost of reproduction and certification, *unless otherwise provided by State statute*. Such fees shall be imposed according to a standard scale of fees, established and made public by the body imposing them." (Emphasis added.) 5 ILCS 140/6(a) (West 2006).

We agree with defendant that, under the plain language of section 6(a), the charge for the reproduction of public records must be reasonably calculated based on the actual cost of reproduction. Defendant claims that the actual-cost provision of the FOIA does not apply in this case, because the cost provisions of the Property Tax Code and Resolution FI—0002—02 control the cost of reproducing the specific type of data that Sage seeks; therefore, those provisions, rather than the FOIA, control the fees that defendant may charge to reproduce the public records sought by Sage. Section 6(a) provides that the public body may charge no more than the actual cost of reproduction of public records *unless another statute allows otherwise*. Accordingly, we must examine the Property Tax Code and Resolution FI—0002—02, as well as section 5—1106.1 of the Counties Code, to determine if those cost provisions should apply.

## 3. Section 14—30 of the Property Tax Code

■ Section 14—30 provides:

"Hearings on revisions or corrections; public records.

In all counties, all hearings held by the chief county assessment officer in support of or in opposition to a proposed revision or correction in assessed valuation shall be open to the public. All files maintained by the chief county assessment officer relating to the assessed valuation of any property, and all complaints, supporting documents, and other evidence submitted by the complainant shall be available for public inspection during regular office hours of the chief county assessment officer.

\* \* \*

The chief county assessment officer shall promptly furnish to any person copies of all complaints, supporting documents and other evidence submitted by a complainant, subject to the foregoing qualification, and all public records of the chief county assessment officer for a fee of 35 cents per page of legal size or smaller and $1 for each larger page." 35 ILCS 200/14—30 (West 2006).

Sage contends that section 14—30 is limited exclusively to resolving "revisions or corrections" of real estate taxation disputes, while Sage seeks an electronic copy of the real property assessment file that is unrelated to revisions and corrections of real estate taxation disputes. Defendant contends that section 14—30 applies to all assessment records, including those requested here. We agree that this section is not limited to a complainant's request for a revision or correction of a valuation of a property tax assessment. In addition to complaints, supporting documents, and other evidence submitted by a complainant, section 14—30 also states that "all public records of the chief county assessment officer" are to be copied for a fee of 35 cents per legal-size page. Under the clear language of this provision, a proper charge for *any* records, whether compiled by the county assessor or provided by a complainant, may be imposed at a set rate. Thus, section 14—30 applies specifically to the reproduction of property tax assessment records.

While we agree that section 14—30 is not limited to hearings and is applicable to copying property assessment records, the analysis does not stop here. Section 14—30 appears to equate the term "record" with paper. Nowhere in the Property Tax Code is the term "record" defined. Section 14—30 does not provide for copying CDs or other digital media; it charges only per page of a given size. Sage did not request paper copies. Sage requested a CD, or some other form of electronic media download, of the real property assessments for Du Page County. Defendant erroneously likens the records Sage seeks with pieces of paper for which separate copying charges may be imposed. Section 14—30 provides no basis to charge Sage for electronic

media downloads. In fact, there is no provision under section 14—30 that applies to copying charges for property records produced in an electronic format. Thus, we cannot find that the cost provision of section 14—30 relates to Sage's request.

### 4. Section 9—20 of the Property Tax Code

■ We do, however, find a basis to relate the provisions of section 9—20, in conjunction with Resolution FI—0002—02, to Sage's specific request, over the FOIA. Section 9—20 gives to the county assessor the authority to establish and maintain property record cards on electronic equipment or microfiche. Section 9—20 provides:

"In all counties, all property record cards maintained by a township assessor, multi-township assessor, or chief county assessment officer shall be public records, and shall be available for public inspection during business hours, subject to reasonable rules and regulations of the custodian of the records. Upon request and payment of such *reasonable fee established by the custodian*, a copy or printout shall be provided to any person.

Property record cards may be established and maintained on electronic equipment or microfiche, and that system may be the exclusive record of property information." (Emphasis added.) 35 ILCS 200/9—20 (West 2006).

The online glossary of the supervisor of assessments of Du Page County defines a "property record card" as one "used to record individual property characteristics used to determine the assessment." Du Page County, Supervisor of Assessments, Glossary: Common Property Tax, Appraisal and Assessment Related Terms, *available at* http://www.dupageco.org/soa/generic.cfm?doc_id=3783 (last visited May 19, 2009). Sage acknowledged during oral argument that the property record cards contain the relevant information Sage requested from defendant, and therefore section 9—20 is applicable in this respect. Sage also stated that section 9—20 applies to the dissemination of electronic assessment information.

Although section 9—20 states that copies are provided, we find nothing in the statute that limits the term to "paper" copies, as does section 14—30. In fact, the statute refers to property record cards that may be established and maintained on electronic equipment, thereby implying that copies may be delivered electronically. Thus, unlike the FOIA, section 9—20 specifically applies to the subject matter that Sage seeks: the electronic dissemination of property assessment information. Section 9—20 imposes a reasonable fee for copying, while the FOIA imposes a fee based on the actual cost of reproducing records. 5 ILCS 140/6(a) (West 2006); 35 ILCS 200/9—20 (West 2006). Thus, because section 9—20 specifically applies to the electronic dissemina-

tion of property assessment information, which Sage seeks, the county may set its charge under the cost provision of this section. Although a set fee is not imposed by section 9—20, we believe that the county set a fee pursuant to Resolution FI—0002—02. Whether the fee is reasonable will be dealt with in the last issue.

### 5. Resolution FI—0002—02

In Resolution FI—0002—02, the Board established a uniform rate schedule for Du Page County's database products. The Board declared, in relevant part:

"WHEREAS, it is necessary on a periodic basis to review the Uniform Rate Schedule for the various map and database products sold by the various departments in the County; and

WHEREAS, it has been found that the Uniform Rate Schedule for the various map and database products needs to be updated in order to provide a wider range of products and recover *reasonable* costs for these products.

NOW, THEREFORE, BE IT RESOLVED by the County Board of Du Page County that the attached amended Uniform Rate Schedule will apply to the sale of all map and database products sold by the various departments in the County;

\* \* \*

D. County Clerk Real Estate Database Products
1. Real Estate Database Listing

\* \* \*

b. Entire Real Estate          $5500.00." (Emphasis added.)
Du Page County Board Resolution FI—0002—02 (December 11, 2001).

■ Clearly, the legislature in section 9—20 of the Property Tax Code granted the county, as custodian of the property records, the power to set "reasonable fees" for providing copies of property record cards maintained on electronic equipment. 35 ILCS 200/9—20 (West 2006). In its resolution, the Board, as custodian of the property records, established the "reasonable fees" for copying the database products that are sold by the various county departments. Included among those fees is section D(1)(b) of the resolution, which charges $5,500 for the entire real estate database listing.

Section 9—20 provides that property record cards may be maintained on electronic equipment. 35 ILCS 200/9—20 (West 2006). As stated, Sage acknowledged that section 9—20 encompasses the relevant information and the dissemination that it seeks. The resolution imposes a fee for the entire real estate database listing that Sage seeks. Thus, we conclude that, under section 9—20 of the Property

Tax Code, the "reasonable fee" assessed by the Board encompasses the electronic dissemination of the property assessments on the property record cards that Sage seeks. Accordingly, we find that the cost provision of section 9—20, in conjunction with Resolution FI—0002—02, applies to the subject matter of this case, over the actual-cost provision of section 6(a) of the FOIA.

## 6. Section 5—1106.1 of the Counties Code

■ Sage maintains that section 5—1106.1(c) of the Counties Code applies to the dissemination of electronic data in bulk or compiled form, which is precisely what Sage asked for here, and that therefore defendant was obligated to charge Sage pursuant to the cost provision of section 5—1106.1(c). 55 ILCS 5/5—1106.1(c) (West 2006). Defendant asserts that Sage has forfeited this argument because it did not originally plead it. " 'It is a fundamental rule, with no exceptions, that a party must recover, if at all, on and according to the case [it] has made for [itself] by [its] pleadings.' " *Newton v. Aitken*, 260 Ill. App. 3d 717, 718 (1994), quoting *Broberg v. Mann*, 66 Ill. App. 2d 134, 137-38 (1965). Sage counters that it raised this argument in response to defendant's motion to dismiss and that therefore we should address it. Procedural default issues aside, Sage's argument lacks merit.

Section 5—1106.1 provides:

"Public records; Internet access.

(a) Any county may provide Internet access to public records maintained in electronic form. This access shall be provided at no charge to the public. Any county that provides public Internet access to records maintained in electronic form may also enter into a contractual arrangement for the dissemination of the same electronic data in bulk or compiled form.

(b) For the purposes of this Section, 'electronic data in bulk form' is defined as all, or a significant subset, of any records to which the public has free Internet access, as is and without modification or compilation; and 'electronic data in compiled form' is defined as any records to which the public has free Internet access but that has been specifically selected, aggregated, or manipulated and is not maintained or used in the county's regular course of business.

(c) If, but only if, a county provides free Internet access to public records maintained in electronic form, the county may charge a fee for the dissemination of the electronic data in bulk or compiled form, but the fee may not exceed 110% of the actual cost, if any, of providing the electronic data in bulk or compiled form.

The fee must be paid to the county treasurer and deposited into a fund designated as the County Automation Fund; except that in counties with a population exceeding 3,000,000, the fee shall be paid into a fund designated as the Recorder's Automation Fund.

(d) The county must make available for public inspection and copying an itemization of the actual cost, if any, of providing electronic data in bulk or compiled form, including any and all supporting documents. The county is prohibited from granting to any person or entity, whether by contract, license, or otherwise, the exclusive right to access and disseminate any public record." 55 ILCS 5/5—1106.1 (West 2006).

Sage points out that this section specifically applies to Internet and electronic access to records in the assessment office. Sage emphasizes the statute's provision that "[t]his access shall be *provided at no charge to the public*" because Internet access can involve only *de minimis* actual costs. (Emphasis added.) 55 ILCS 5/5—1106.1(a) (West 2006). Sage further stresses that this section provides specific authority on the dissemination of "the same electronic data in *bulk or compiled form*" and that the county "may charge a fee *** but the fee *may not exceed 110% of the actual cost, if any, of providing the electronic data.*" (Emphases added.) 55 ILCS 5/5—1106.1(a), (c) (West 2006).

We do not find section 5—1106.1 applicable. Although the Counties Code is more specific than the FOIA, as it relates to the format of electronic data in compiled form, it is not as specific as section 9—20 of the Property Tax Code, because section 9—20 relates to a particular type of county record, namely property tax records, as well as the dissemination of the records electronically.

Furthermore, while some property tax records are available on the Internet, Sage presented evidence of such availability only on a parcel-by-parcel basis, not in bulk or compiled form, as required by the statute. No evidence was produced to show that the records sought by Sage are available on the Internet in bulk or compiled form.

### 7. Public Policy

■ Sage raises a public policy argument regarding the trial court's determination, contending that it cuts against the policy considerations of openness and access to public records under the FOIA. In particular, Sage asserts that Resolution FI—0002—02 "opens the door to a very slippery slope," whereby the county has the power to make money simply by passing a resolution specific enough in detail so as to preempt the control of the FOIA. However, the FOIA is not preempted in this case. The issue is resolved by controlling principles of statutory construction. The FOIA permits another statute to set its own fee provisions for the cost of reproduction. Considerations of public policy are superfluous when the statutory language is clear. *Village of Roselle v. Roselle Police Pension Board*, 382 Ill. App. 3d 1077, 1083 (2008).

## 8. Whether the Reasonableness of the $5,500 Was a Question of Material Fact

Sage last contends that the trial court erred by improperly deciding a material and genuine question of fact regarding the reasonableness of the $5,500 reproduction charge.

> "Section 2—619 provides a means to dispose of issues of law or of easily proved issues of fact. [Citations.] A section 2—619 motion admits all well-pleaded facts in the complaint but does not admit conclusions of law or conclusions of fact unsupported by specific allegations. [Citation.] The trial court should grant the motion only if, after construing the documents supporting the motion in the light most favorable to the nonmovant, it finds no disputed issues of fact. [Citation.] The trial court may not weigh the evidence or decide controverted material issues of fact. [Citation.]" *Draper v. Frontier Insurance Co.*, 265 Ill. App. 3d 739, 742 (1994).

■ The question of the reasonableness of the $5,500 fee is a substantial factual dispute. Although Sage alleged that the fee exceeded the actual cost of copying, in violation of the FOIA, the complaint essentially raised an allegation regarding the reasonableness of the charge. Sage compared the cost of reproducing property tax records to the cost of production of voter files by local election authorities for electronic transmission to the State Board of Elections and to the cost of voter files in surrounding counties, which was less than $100. Defendant offered no factual basis for his conclusion that the charge of $5,500 is reasonable, other than his bare assertions that the charge is reasonable when compared to a charge exceeding $113,000 and that it is reasonable because it follows the guidelines established by the county under the various Property Tax Code provisions and the Board's "whereas clause" in the resolution. Thus, the response by defendant is conclusory, and a mere recitation or paraphrase of statutory language, without giving any clue as to the factual basis, does not establish the reasonableness of the fee. We find that the trial court erred when it decided a controverted material issue of fact, and we conclude that the trial court should have denied defendant's section 2—619 motion.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court and remand the cause for further proceedings consistent with the views expressed herein.

Reversed and remanded.

O'MALLEY and JORGENSEN, JJ., concur.