No. 2--09--0648

---

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

---

| | | |
|---|---|---|
| JEANNIE CHILDS, as Independent Administrator of the Estate of Dorothy Jones, Deceased, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 08--L--125 |
| | ) | |
| PINNACLE HEALTH CARE, LLC; TRUST 26--6859; TRUST 8002347755; MARK TUCCI; DAISY ANDALEON; DOCTOR'S OFFICE OF ZION; BARRY J. GANS; ERIC ROTHNER; MARY J. CLAUSSEN; and MARY ANN GEDVILAS, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants | ) ) | Honorable Christopher C. Starck, |
| (Carolyn English, Defendant-Appellee). | ) | Judge, Presiding. |

---

JUSTICE HUDSON delivered the opinion of the court:

Plaintiff, Jeannie Childs, as independent administrator of the estate of Dorothy Jones, deceased, filed a multiple-count complaint against various entities and individuals, including Pinnacle Health Care, LLC (Pinnacle) and registered nurse Carolyn English. Prior to her death, Jones was a resident at Pinnacle's nursing home in Waukegan, Illinois, where English was the director of nursing. The trial court dismissed with prejudice counts XXIII, XXIV, and XXV of plaintiff's complaint, all of which were directed against English. The court reasoned that plaintiff's allegations were limited

to English's role as the director of nursing for Pinnacle; that, although titled otherwise, the three counts were premised on the Nursing Home Care Act (210 ILCS 45/1--101 et seq. (West 2008)); and that only licensees and owners of nursing homes can be held liable pursuant to the Nursing Home Care Act (see 210 ILCS 45/3--601 (West 2008)). In this appeal brought pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), plaintiff asserts that the counts against English were improperly dismissed, because they stated causes of action for professional negligence pursuant to section 2--622 of the Code of Civil Procedure (Code) (735 ILCS 5/2--622 (West 2008)), commonly referred to as the Healing Arts Malpractice Act. Alternatively, plaintiff asserts that the trial court abused its discretion in dismissing with prejudice the three counts against English. For the reasons that follow, we reverse the judgment of the trial court and remand the matter for further proceedings.

## I. BACKGROUND

According to plaintiff's complaint, Jones was born on October 26, 1947. As a result of multiple sclerosis, Jones was rendered nonambulatory, and she became a resident of Pinnacle's long-term care facility in Waukegan, Illinois, on July 26, 2002. When Jones began residing at Pinnacle's facility, she had no skin impairment. However, skin assessments administered by Pinnacle personnel between January 20, 2005, and October 4, 2006, categorized Jones to be at high risk for developing pressure sores. During Jones's residency at Pinnacle's facility, she developed 16 pressure sores, including seven stage IV decubitus ulcers, one stage III decubitus pressure sore, one stage II decubitus pressure sore, and one pressure sore that was categorized as "unstageable." By October 4, 2006, the pressure ulcers had become infected and progressed to more serious stages, including bleeding from a sacral decubitus ulcer, necessitating Jones's transfer from Pinnacle's facility to Victory Memorial Hospital. Upon her admission, the hospital documented Jones's injuries to include: (1) a

sacral pressure ulcer so large, deep, and infected that liquid stool was seeping out of her vagina; (2) a scalp pressure ulcer that appeared to reach down to the skull; (3) a left leg pressure ulcer that exposed Jones's tendons; and (4) pressure ulcers on Jones's ears, which exposed cartilage. Moreover, prior to Jones's transfer from Pinnacle's facility on October 4, 2006, she had developed multiple severe urinary tract infections, symptoms of recurrent infection with yellow-green sputum production, and severe respiratory problems. Jones died from respiratory failure on October 6, 2006.

On August 3, 2007, plaintiff (Jones's daughter) was appointed the independent administrator of Jones's estate. On February 11, 2008, plaintiff filed the complaint at issue. As noted above, three counts were directed against English. Those counts were styled as "Medical Malpractice" (count XXIII), "Wrongful Death" (count XXIV), and "Funeral and Burial Expenses" (count XXV). Count XXIII was brought by plaintiff under the provisions of the Illinois survival statute (755 ILCS 5/27--6 (West 2008)), while counts XXIV and XXV were premised upon provisions of the Wrongful Death Act (740 ILCS 180/1 et seq. (West 2008)).

All three counts stated that English, a registered nurse, was, "[a]t various times relevant," Pinnacle's director of nursing. Plaintiff asserted that on or prior to October 4, 2006, and at all times relevant, English knew or should have known that Jones was at a high risk for skin breakdown, pressure sores and infections therefrom, urinary tract infections, and respiratory problems. Plaintiff alleged that English "had a duty to provide nursing and nursing home services consistent with the standard of care for like institutions and medical treatment providers when treating residents and patients similar to [Jones]." Paragraph 16 of each count alleged that English breached her duty and was negligent in that she committed one or more of the following acts or omissions:

"a. failed to hire qualified and experienced nursing staff to provide appropriate care and treatment to DOROTHY JONES during her residency pursuant to the state and federal regulations governing nursing home residents;

b. failed to ensure that the medical and nursing services provided to DOROTHY JONES met the applicable regulations, policies, procedures and standards for overall quality of care;

c. failed to ensure the safety and welfare of DOROTHY JONES pursuant to the state and federal regulations governing nursing home residents;

d. failed to evaluate, monitor and supervise the overall quality of healthcare being provided by the attending physician, nursing staff and other medical personnel pursuant to the state and federal regulations governing nursing home residents;

e. failed to demonstrate a personal effort to improve the overall quality of care being provided to DOROTHY JONES by the medical and nursing staff during her residency;

f. failed to ensure that the nursing staff implemented a care plan that addressed the specific measures necessary to treat a highly complex, total-care resident like DOROTHY JONES;

g. failed to ensure that the medical and nursing staff provided adequate monitoring and care to prevent the development and worsening of numerous infected decubitus ulcers, pursuant to the state and federal regulations governing nursing home residents;

h. failed to ensure that the nursing staff appropriately assessed, monitored and consistently documented the status of DOROTHY JONES' skin, wounds and clinical

condition during her residency pursuant to the state and federal regulations governing nursing home residents;

i. failed to monitor and timely obtain treatment orders for infections pursuant to the state and federal regulations governing nursing home residents;

j. failed to recommend that the appropriate medical consultants were consulted when DOROTHY JONES' pressure sores continued to worsen;

k. failed to ensure that DOROTHY JONES' skin remained free of pressure sores throughout her residency as it was upon her admission to PINNACLE HEALTHCARE, pursuant to the state and federal regulations governing nursing home residents;

l. failed to ensure that the nursing staff notified the physician and family members of other significant changes in DOROTHY JONES' clinical condition throughout her residency;

m. failed to ensure that the nursing staff followed physician orders and administered medications and treatments as ordered pursuant to state and federal regulations governing nursing home residents;

n. failed to ensure that the nursing staff was providing appropriate care to DOROTHY JONES' PEG tube stoma site in order to prevent infections;

o. failed to ensure that the nursing staff kept the head of the bed at an appropriate level in order to prevent aspiration pneumonia and other respiratory problems;

p. failed to ensure that DOROTHY JONES was properly medicated for pain pursuant to the state and federal regulations governing nursing home residents;

q. failed to evaluate and address the continued appropriateness of DOROTHY JONES' medical regime during her residency and change the plan of care as needed; [and]

r. failed to ensure that the nursing staff followed proper nursing policy and procedures for performing gastrostomy feedings."

The counts further alleged that as a direct and proximate result of one or more of the foregoing acts or omissions of English, Jones suffered injuries of a personal and pecuniary nature, including, but not limited to, pain and suffering, disability and disfigurement, and medical and related expenses.

Attached to plaintiff's complaint were various certificates for "an Action in Medical Malpractice Pursuant to 735 ILCS 5/2--622." See 735 ILCS 5/2--622 (West 2008). Relevant here is a certificate signed by Patricia Bawcum, a licensed registered nurse. Bawcum opined that there existed a meritorious basis for filing an action against English. Regarding the specific acts or omissions allegedly committed by English, Bawcum set forth allegations of negligence essentially identical to those in paragraph 16 of counts XXIII, XXIV, and XXV of plaintiff's complaint. Bawcum concluded her certificate with the following statement:

"In summary, Carolyn English, R.N., Director of Nursing repeatedly fell below the standard of care individually and through their [sic] nursing staff's treatment of DOROTHY JONES in terms of managing her overall clinical condition and skin and wound care. As a result, she developed respiratory failure and numerous horrendous infected pressure ulcers, which caused her disfigurement and extreme pain and suffering and ultimately caused or contributed to cause her death."

English filed her answer to plaintiff's complaint on June 4, 2008.[1]

---

[1]According to English's brief, she denied all material allegations of the counts against her. However, because two pages of English's answer are missing from the record, we cannot verify this claim.

On February 10, 2009, English moved the trial court to dismiss with prejudice counts XXIII, XXIV, and XXV of plaintiff's complaint (see 735 ILCS 5/2--619 (West 2008)), or in the alternative to enter judgment on the pleadings (see 735 ILCS 5/2--615(e) (West 2008)). In her motion, English argued that despite their headings, counts XXIII, XXIV, and XXV of plaintiff's complaint did not allege any "independent acts of negligence" against her. Rather, English argued, the counts consisted of "allegations of statutory violations pursuant to the Illinois Nursing Home Care Act *** and the Illinois Department of Public Health regulations, 77 Ill. Admin. Code, Part 300 et seq." English argued that liability for violations of the Nursing Home Care Act can be imposed only upon the owner or licensee of a nursing home. See 210 ILCS 45/3--601 (West 2008); Wills v. De Kalb Area Retirement Center, 175 Ill. App. 3d 833, 845 (1988). Thus, English reasoned, she could not be held liable under the Nursing Home Care Act for her activities as an employee or the director of nursing for Pinnacle. On March 10, 2009, plaintiff filed a response to English's motion. In her response, plaintiff argued that the allegations against English were brought individually for medical malpractice and not based upon her activities as director of nursing or as an employee or agent of Pinnacle. Plaintiff alternatively requested leave to file an amended pleading to remedy any deficiencies of the complaint.

On March 17, 2009, the trial court entered an order granting English's motion and ordered counts XXIII, XXIV, and XXV of plaintiff's complaint dismissed with prejudice.[2] The order further pronounced that there was "no just reason to delay the filing of an appeal pursuant to [Supreme Court Rule] 308(a) [155 Ill. 2d R. 308(a)]." On April 7, 2009, the trial court, on English's motion, entered

---

[2]The March 17, 2009, order does not explain the court's reasoning. Moreover, the record does not contain a transcript for the proceedings, if any, on March 17, 2009.

a corrected order <u>nunc pro tunc</u> to refer in the March 17, 2009, order to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)) rather than to Rule 308(a).

On April 13, 2009, plaintiff filed a motion to reconsider the trial court's March 17, 2009, order. In her motion, plaintiff reiterated her position that the counts against English were premised on section 2--622 of the Code (735 ILCS 5/2--622 (West 2008)) and supported by a certificate for a meritorious claim in medical malpractice. Plaintiff asked the trial court to reevaluate the actual allegations made against English, particularly in relation to the supreme court's ruling in <u>Eads v. Heritage Enterprises, Inc.</u>, 204 Ill. 2d 92 (2003) (holding that plaintiffs who assert private rights of action under the Nursing Home Care Act are not required to comply with the mandates of section 2--622 of the Code). Plaintiff contended that the allegations against English were not merely examples of supervisory responsibilities corresponding with English's role as director of nursing, but rather that they constituted allegations of "specific independent acts performed by ENGLISH that were below the standard of care for nurses." Plaintiff also maintained that the trial court's decision thwarted the purpose of the Nursing Home Care Act, which is to establish "standards for the treatment and care of nursing home residents and to punish nursing homes for their acts of abuse or neglect causing injury to residents," and not to "shield nurses from being held accountable for their negligent conduct." Finally, plaintiff contended that the trial court erred in refusing her request for leave to file an amended pleading.

On April 21, 2009, plaintiff filed a motion for leave to file her first amended complaint. In her motion, plaintiff noted that a motion to reconsider the trial court's order granting English's motion to dismiss the counts against her was currently pending. Nevertheless, plaintiff sought leave to amend the allegations against English as well as to amend allegations made against a different defendant who

had filed a motion to strike portions of plaintiff's complaint against her. The copy of plaintiff's motion in the record is not accompanied by a proposed first amended complaint.

On May 20, 2009, the trial court entered an order denying plaintiff's motion to reconsider the March 17, 2009, order, "for the reasons stated in open court on the record." On the same day, the court granted plaintiff leave to file an amended complaint against the remaining defendants on or before May 29, 2009. In addition, the court found that pursuant to Rule 304(a) (210 Ill. 2d R. 304(a)), there was no just reason for delaying either enforcement or appeal of the court's March 17, 2009, order or the court's denial of the motion to reconsider same.

During the hearing on the motion to reconsider, the court stated that it was denying the motion to reconsider because "there still aren't any facts that change the landscape in that everything that nurse English is alleged to have done she did as the director of nursing, not as the nurse for the patient." The court further articulated that "[t]hat's the distinction that I draw, and I agree with the defense that that is the distinction that the statute draws and no matter how this is pled, when it comes to the end of the day, this is a nursing care act case as far as nurse English because she is only involved because she is the director or nursing." Plaintiff's attorney indicated that he intended to file an amended complaint that would "probably include a cause of action against nurse English alleging things that, [he] believe[s], could be alleged." The court responded that counsel could not file a complaint against English. The court explained that in order to file an amended complaint including allegations directed against English, plaintiff would have had to "allege either a change in the law or new facts that the court was not aware of" when the original complaint was filed. The court found that plaintiff's motion to reconsider "did not allege new facts which would change the role of nurse

English." As such, the court stated that plaintiff was "barred" from filing a complaint against English in this case.

Thereafter, plaintiff filed a notice of appeal from the trial court's March 17, 2009, order and the May 20, 2009, denial of the motion to reconsider the March 17, 2009, order. The notice of appeal is file stamped June 16, 2009. Plaintiff also filed on June 16, 2009, a motion for leave to file a first amended complaint. Attached to plaintiff's motion were two documents. The first document, captioned a "Previously Proposed" first amended complaint, included three counts directed against English. The second document, captioned simply "Plaintiff's First Amended Complaint at Law," did not contain any allegations against English. On June 16, 2009, the trial court granted plaintiff's motion for leave to file her first amended complaint instanter. That same day, plaintiff filed in the trial court a first amended complaint that omitted the allegations against English. On plaintiff's motion, we stayed the proceedings in the trial court pending the outcome of this appeal. See 210 Ill. 2d R. 305(b).

## II. ANALYSIS

Prior to addressing the merits of plaintiff's appeal, we address English's claim that plaintiff has forfeited any objection to the trial court order granting her motion to dismiss counts XXIII, XXIV, and XXV of the original complaint by filing a first amended complaint. In Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp., 96 Ill. 2d 150, 153 (1983), the supreme court set forth the circumstances under which a party who files an amended complaint forfeits any objection to the trial court's ruling on any former complaints. The court explained that " '[w]here an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be part of the record for most purposes, being in effect abandoned and withdrawn.' " Foxcroft, 96 Ill.

2d at 154, quoting Bowman v. County of Lake, 29 Ill. 2d 268, 272 (1963). As the supreme court has stated, such a rule is supported by significant policy considerations:

"In particular is the interest in the efficient and orderly administration of justice. It is expected that a cause will proceed to trial on the claims as set forth in the final amended complaint.

This procedure ensures that the trial judge will be aware of the points in issue, and can properly rule on objections at trial. To allow a party to also introduce allegations related in earlier pleadings would result in confusion and impose an unnecessary burden upon the trial judge. No interest would be served by requiring the judge to speculate as to which legal theories or claims a party intends to advance during trial.

The complaint notifies the defendant of the alleged causes of action and theories of recovery. When a complaint is amended, without reference to the earlier allegations, it is expected that these allegations are no longer at issue. Defendants would be disadvantaged by a rule which would, in effect, permit a plaintiff to proceed to trial on different issues contained in separate complaints. In contrast, we perceive no undue burden in requiring a party to incorporate in its final pleading all allegations which it desires to preserve for trial or review." Foxcroft, 96 Ill. 2d at 154.

To avoid the consequences of the Foxcroft rule, a party wishing to preserve a challenge to an order dismissing fewer than all of the counts in his complaint has several options. For instance, he or she can elect to stand on the dismissed counts and argue the matter at the appellate level. Du Page Aviation Corp., Flight Service Inc. v. Du Page Airport Authority, 229 Ill. App. 3d 793, 800 (1992). Alternatively, the party can file an amended complaint realleging, incorporating by reference, or referring to the claims set forth in the prior complaint. Doe v. Roe, 289 Ill. App. 3d 116, 119

(1997); see also Tabora v. Gottlieb Memorial Hospital, 279 Ill. App. 3d 108, 114 (1996) (noting that "[a] simple paragraph or footnote in the amended pleadings notifying [the] defendants and the court that [the] plaintiff was preserving the dismissed portions of his former complaints for appeal" is sufficient to protect against forfeiture under Foxcroft); Saunders v. Michigan Avenue National Bank, 278 Ill. App. 3d 307, 312 (1996) (holding that the plaintiff preserved for review allegations in her second amended complaint where a footnote in the third amended complaint provided that " '[t]he prior complaints are attached as Appendix A to preserve the previously dismissed claim [sic] for appeal' "); Arnold v. Village of Chicago Ridge, 181 Ill. App. 3d 778, 782-83 (1989) (concluding that the plaintiff did not forfeit counts stricken from her prior complaints where her third amended complaint made reference to the dismissed counts and therefore did not evince an intent to abandon the stricken claims). Thirdly, a party can perfect an appeal from the order dismissing fewer than all of the counts of his or her complaint prior to filing an amended pleading that does not include reference to the dismissed counts. Brown Leasing, Inc. v. Stone, 284 Ill. App. 3d 1035, 1043-44 (1996) (noting that after the plaintiff perfected an appeal of the order dismissing a portion of its complaint, the trial court retained jurisdiction to allow the filing of amended pleadings limited to claims that raise issues independent of those presented to the appellate court).

At the outset, we point out that the proceedings in the trial court have been stayed. Therefore, the policy considerations referenced by the supreme court in Foxcroft (see 96 Ill. 2d at 154) are not implicated in this case. In addition, we find that two of the exceptions to the Foxcroft rule apply so as to allow plaintiff to pursue the present appeal. First, the record establishes that plaintiff perfected the appeal of the order dismissing the counts against English prior to filing her first amended complaint. Plaintiff had 30 days after the entry of the order disposing of the last pending

postjudgment motion to file her notice of appeal. Official Reports Advance Sheet No. 8 (April 11, 2007), R. 303(a)(1), eff. May 1, 2007; 210 Ill. 2d R. 304(a) (noting that the time for filing a notice of appeal from a judgment as to fewer than all parties or claims shall be as provided in Supreme Court Rule 303). As a general rule, a notice of appeal is considered to be filed on the date that it is actually received by the circuit court clerk. 155 Ill. 2d R. 373. However, if the notice of appeal is received after the due date, the so-called "mailbox rule" provides that the time of mailing will be the time of filing. 155 Ill. 2d R. 373; Standard Mutual Insurance Co. v. Rogers, 381 Ill. App. 3d 196, 198 (2008) (holding that notice of appeal, received by circuit court clerk more than 30 days after trial court's final judgment, was timely where the notice was mailed within the applicable period). In this case, the trial court entered the order granting English's motion to dismiss the counts against her on March 17, 2009. On April 13, 2009, plaintiff filed a timely motion to reconsider, which the trial court denied on May 20, 2009. Therefore, plaintiff had until 30 days after May 20, 2009, or up to and including June 19, 2009, to file a timely notice of appeal. See Official Reports Advance Sheet No. 8 (April 11, 2007), R. 303(a)(1), eff. May 1, 2007.

According to the affidavit of mailing and proof of service accompanying plaintiff's filing, her notice of appeal was deposited in the United States mail on June 12, 2009. See 155 Ill. 2d R. 373; 145 Ill. 2d R. 12(b)(3). The notice of appeal was file stamped by the clerk of the circuit court on June 16, 2009. Since the notice of appeal reached the circuit court clerk prior to its due date, we consider the date of filing to be the date that it was received by the clerk as evidenced by the file stamp. 155 Ill. 2d R. 373. In this case, plaintiff's first amended complaint also bears a file stamp date of June 16, 2009, and the file-stamp legend does not indicate a time of filing. Nevertheless, we point out that the notice of appeal appears in the record prior to the amended complaint. Moreover, before plaintiff

could file her first amended complaint, she was required to obtain an order from the trial court granting her permission to file the pleading. Under these circumstances, we conclude that plaintiff perfected the appeal from the trial court order dismissing the counts against English before plaintiff filed her first amended complaint. As a result, plaintiff has not forfeited consideration of the issue presented in this appeal. See Brown Leasing, Inc., 284 Ill. App. 3d at 1044 ("Once the jurisdiction of the appellate court attaches, the trial court retains jurisdiction of a case to hear and determine only those matters which are independent of and unrelated to that portion of the proceedings that pends on appeal").

Given the foregoing sequence of events, we believe that an opposite conclusion would lead to anomalous results. Consider, for instance, if each event in the sequence had occurred just one week later. That is, plaintiff deposited her notice of appeal in the United States mail on June 19, 2009. The circuit clerk received the document and file stamped it on June 23, 2009. Also on June 23, 2009, plaintiff was granted leave to file her first amended complaint instanter and did so. Under this scenario, the notice of appeal would still be timely. However, because it would have been received by the clerk of the court after the date it was due, the time of mailing would have been deemed to be the time of filing (155 Ill. 2d R. 373; Standard Mutual Insurance Co., 381 Ill. App. 3d at 198) and plaintiff would have been considered to have perfected the appeal prior to the date she filed her first amended complaint.

In any event, the record also suggests that the Foxcroft rule does not apply for a second reason--that is, plaintiff preserved the counts against English when she filed her first amended complaint. In her motion for leave to file the first amended complaint, plaintiff noted that her original complaint was "a matter of record and [was] incorporated herein by reference as though fully set

forth." Plaintiff further noted that her request for leave to file an amended complaint including allegations against English was denied. Nevertheless, plaintiff attached as an exhibit a "previously proposed" first amended complaint containing the allegations she wished to make against English in addition to a copy of the first amended complaint omitting the same allegations. These actions indicate that plaintiff did not intend to abandon or withdraw the allegations against English. See Foxcroft, 96 Ill. 2d at 154; Tabora, 279 Ill. App. 3d at 114; Saunders, 278 Ill. App. 3d at 312; Arnold, 181 Ill. App. 3d at 782-83.

Finally, we find that English's reliance on Boatmen's National Bank of Belleville v. Direct Lines, Inc., 167 Ill. 2d 88 (1995), and Du Page Aviation Corp., 229 Ill. App. 3d 793, is misplaced. In both of those cases, the plaintiffs filed their amended complaints before they filed their notices of appeal. See Boatmen's National Bank of Belleville, 167 Ill. 2d at 91-97; Du Page Aviation Corp., 229 Ill. App. 3d at 797. Accordingly, for all of the reasons set forth above, we conclude that plaintiff has not forfeited consideration of her claims against English. We now turn to the merits of plaintiff's appeal.

In her motion to dismiss the counts against her, English did not specify upon which subparagraph of section 2--619 of the Code (735 ILCS 5/2--619 (West 2008)) the motion was premised. However, it appears to be based upon section 2--619(a)(9) (735 ILCS 5/2--619(a)(9) (West 2008)). That provision permits involuntary dismissal where the claim asserted against the defendant is barred by some affirmative matter avoiding the legal effect of or defeating the claim. Van Meter v. Darien Park District, 207 Ill. 2d 359, 367 (2003). The affirmative matter under section 2--619 is in the nature of a defense that negates the cause of action completely. Van Meter, 207 Ill. 2d at 367. The moving party admits the legal sufficiency of the complaint, but asserts an affirmative

defense or other matter to defeat the plaintiff's claim. Van Meter, 207 Ill. 2d at 367. In ruling on a section 2--619 motion to dismiss, the court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. Van Meter, 207 Ill. 2d at 367-68. We review de novo a dismissal pursuant to section 2--619 of the Code. Sage Information Services v. King, 391 Ill. App. 3d 1023, 1028 (2009).

Plaintiff contends that the trial court erred in dismissing the three counts directed against English. According to plaintiff, while liability under the Nursing Home Care Act may be limited to owners and licensees of nursing homes (see 210 ILCS 45/3--601 (West 2008); Wills, 175 Ill. App. 3d at 845), the avowed purpose behind the statute does not prohibit a party from bringing a cause of action against a medical professional employed at a nursing home, independently of the Nursing Home Care Act (see Eads, 204 Ill. 2d at 108-09). Plaintiff further maintains that, regardless of the fact that English served as Pinnacle's director of nursing, the allegations against her establish aspects of English's negligent acts or omissions falling within the realm of her professional nursing responsibilities, both in her identified capacity as director of nursing and based upon her own individual nursing duties in the care of Jones. As such, plaintiff reasons, the allegations in the complaint comprise a meritorious cause of action for medical malpractice consistent with the requirements of section 2--622 of the Healing Arts Malpractice Act and independent of the Nursing Home Care Act. We agree.

The Nursing Home Care Act is "a comprehensive statute which established standards for the treatment and care of nursing home residents; created minimum occupational requirements for nurses aides; and expanded the power of the Illinois Department of Public Health to enforce the provisions of the [Nursing Home Care] Act." Harris v. Manor Healthcare Corp., 111 Ill. 2d 350, 358 (1986).

The Nursing Home Care Act includes a "bill of rights," under which nursing home residents are guaranteed certain rights, including the right to manage their own finances, the right to refuse treatment, and the right to be free from abuse and neglect by nursing home personnel. 210 ILCS 45/2--101 through 2--113 (West 2008); Eads, 204 Ill. 2d at 97. Although the Nursing Home Care Act grants nursing home residents a private cause of action against owners and operators of facilities who violate its provisions (210 ILCS 45/3--601 (West 2008) ("The owner and licensee are liable to a resident for any intentional or negligent act or omission of their agents or employees which injures the resident"); Eads, 204 Ill. 2d at 98, 106), the statute does not impose liability on individual employees (Wills, 175 Ill. App. 3d at 844-45). As the supreme court explained:

"It is important to note *** that while claims under the Nursing Home Care Act may sometimes involve a resident's medical care, they do not directly implicate the individual health-care providers. A failure to provide adequate medical care that 'results in physical or mental injury to a resident, or in the deterioration of a resident's physical or mental condition' constitutes neglect (210 ILCS 45/1--117 (West 2000)) and is prohibited by the [Nursing Home Care] Act (210 ILCS 45/2--107 (West 2000)). The only defendants liable for damages, costs, and attorney fees under the [Nursing Home Care] Act, however, are the owners and licensees of the nursing home. See 210 ILCS 45/3--601, 3--602 (West 2000). Nothing in the Nursing Home Care Act requires owners or licensees to be medical professionals themselves, and nothing in the [Nursing Home Care] Act authorizes nursing home residents to recover damages for medical malpractice from the individuals who actually provided the care. Suits against those individuals must be asserted independently of the Nursing Home Care Act." (Emphasis added.) Eads, 204 Ill. 2d at 108-09.

In accordance with the foregoing authority, we must determine whether the counts against English state claims for healing art malpractice independent of the Nursing Home Care Act. In conducting this inquiry, we note that it is the nature of the complaint that defines a cause of action, not the label assigned to it by the plaintiff (Chatham Surgicore, Ltd. v. Health Care Service Corp., 356 Ill. App. 3d 795, 799 (2005); Rekosh v. Parks, 316 Ill. App. 3d 58, 69 (2000)) or the defendant (Cohen v. Smith, 269 Ill. App. 3d 1087, 1093 (1995) ("The fact that the defendants attempt to shield themselves from the plaintiffs' claim by calling this action a medical malpractice claim does not transform it into one")). In other words, we must examine the specific factual allegations in plaintiff's complaint rather than the title placed on each individual count. See Stirs, Inc. v. City of Chicago, 24 Ill. App. 3d 118, 124 (1974).

A plaintiff seeking recovery for healing art malpractice must allege facts that establish the existence of a standard of care by which to measure the defendant's conduct, a negligent breach of that standard of care by the defendant, and an injury to the plaintiff proximately caused by the defendant's breach. Cummings v. Jha, 394 Ill. App. 3d 439, 451 (2009). Plaintiff's complaint contained these elements. As noted earlier, in her complaint, plaintiff stated that English was a registered nurse and Pinnacle's director of nursing. Further, according to plaintiff, on or prior to October 4, 2006, and at all times relevant, English knew or should have known that Jones was at a high risk for skin breakdown, pressure sores and infections therefrom, urinary tract infections, and respiratory problems. The counts alleged that English "had a duty to provide nursing and nursing home services consistent with the standard of care for like institutions and medical treatment providers when treating residents and patients similar to [Jones]." Plaintiff additionally alleged that English breached the aforementioned duty and was negligent by committing 1 or more of 18 acts or

omissions and that, "as a direct and proximate result of the foregoing acts and/or omissions," Jones was injured. Moreover, plaintiff attached to her complaint a certificate for "an Action in Medical Malpractice Pursuant to 735 ILCS 5/2--622" signed by Bawcum, a licensed registered nurse. Bawcum concluded that English "repeatedly fell below the standard of care individually and through their [sic] nursing staff's treatment of [Jones]."

The trial court dismissed the counts against English on the basis that "everything that nurse English is alleged to have done she did as the director of nursing, not as the nurse for the patient." The court further opined that "no matter how this is pled, when it comes to the end of the day, this is a nursing care act case as far as Nurse English because she is only involved because she is the director of nursing." We disagree. Assessing the allegations in plaintiff's complaint in the light most favorable to her, as we are required to do (Van Meter, 207 Ill. 2d at 367), we conclude that the counts against English state claims for healing art malpractice independent of the Nursing Home Care Act. In this regard, we are mindful that the term "healing art" is broadly construed (Woodard v. Krans, 234 Ill. App. 3d 690, 703 (1992)) and generally concerns issues of medical judgment (Kolanowski v. Illinois Valley Community Hospital, 188 Ill. App. 3d 821, 825 (1989)). It encompasses "the entire branch of learning dealing with the restoration of physical or mental health" (Lyon v. Hasbro Industries, Inc., 156 Ill. App. 3d 649, 654 (1987)) and includes conduct not only by physicians and hospitals, but also by other health-care professionals (Bernier v. Burris, 113 Ill. 2d 219, 226-27 (1986)). "Malpractice" is defined generally as "[a]n instance of negligence or incompetence on the part of a professional." Black's Law Dictionary 971 (7th ed. 1999); see also Stedman's Medical Dictionary 917 (25th ed. 1990) (defining "malpractice" as "[m]istreatment of a patient through ignorance, carelessness, neglect, or criminal intent"). "Malpractice" includes a

-19-

professional's "failure to exercise the degree of care and skill that a [professional] of the same medical specialty would use under similar circumstances." Black's Law Dictionary 971 (7th ed. 1999).

Plaintiff's complaint listed 18 separate negligent acts or omissions by English involving medical judgment. Among the allegations against her, English is alleged to have failed to: (1) ensure adequate monitoring by the nursing staff to prevent the development and worsening of numerous infected decubitus ulcers; (2) monitor and timely obtain treatment orders for infection; (3) recommend that the appropriate medical consultants be consulted when Jones's pressure sores continued to worsen; (4) ensure that Jones's skin remained free of pressure sores throughout her residency; (5) ensure that the nursing staff notified the physician and family members of the significant changes to Jones during her residency at Pinnacle; (6) ensure that Jones was properly medicated; and (7) evaluate and address the continued appropriateness of Jones's medical regime during her residency. Given the breadth of the term "healing art malpractice," as well as the fact that the allegations in plaintiff's complaint involve aspects of medical judgment, we conclude that the trial court erred in dismissing the counts against English.

Moreover, we do not agree that these allegations attack English's conduct solely in her capacity as the director of nursing. Plaintiff alleged that English "had a duty to provide nursing and nursing home services consistent with the standard of care for like institutions and medical treatment providers when treating residents and patients similar to [Jones]." (Emphases added.) Further, as noted in the foregoing paragraph, some of the allegations against English relate to the direct care of Jones. Thus, as plaintiff asserts, the allegations establish aspects of English's alleged negligent acts or omissions falling within the realm of her professional nursing responsibilities, both in her identified capacity as director of nursing and based upon her own individual nursing duties in the care of Jones.

The fact that English was the director of nursing during Jones's residency or that the setting of the alleged negligent conduct occurred in a nursing home does not automatically transform this case into one under the Nursing Home Care Act. As noted above, this is not a case merely involving ordinary negligence, such as a fall by a resident of a nursing home. See Eads, 204 Ill. 2d at 94; see also Myers v. Heritage Enterprises, Inc., 354 Ill. App. 3d 241, 247 (2004) (noting that the acts of certified nursing assistants moving a nursing home resident do not constitute skilled medical care requiring a professional negligence instruction); Owens v. Manor Health Care Corp., 159 Ill. App. 3d 684, 688-89 (1987) (holding that "healing arts malpractice" claim was not stated where plaintiff fell as he attempted to remove himself from his wheelchair). Rather, the allegations against English encompass matters of medical judgment. As such, they are appropriately addressed as healing art malpractice, not as general claims of ordinary negligence under the Nursing Home Care Act. English suggests that, because the allegations against her "track" regulations promulgated by the Illinois Department of Public Health (see 77 Ill. Adm. Code §300.1220, amended at 26 Ill. Reg. 10523, eff. July 1, 2006 (relating to the responsibilities of the director of nursing at a skilled nursing facility)), they must necessarily arise under the Nursing Home Care Act. English cites no authority in support of this proposition, and we are unpersuaded by her argument. In Northern Trust Co. v. Louis A. Weiss Memorial Hospital, 143 Ill. App. 3d 479, 484-86 (1986), the court held that a hospital could be held independently liable for medical malpractice for its failure to provide a specially trained nurse to supervise an infant's overnight care as required by regulations promulgated by the Chicago department of health. Thus, the fact that the allegations against English may "track" regulations promulgated by the Illinois Department of Public Health does not automatically remove them from the ambit of the Healing Arts Malpractice Act.

In sum, we conclude that the counts against English include allegations of negligent acts or omissions involving medical judgment. As such, the trial court erred in granting English's motion to dismiss the counts against her. Given our disposition, we need not address plaintiff's alternate claim that the trial court erred in not allowing her leave to file an amended complaint to more fully address the court's concerns about counts XXIII, XXIV, and XXV.

## III. CONCLUSION

For the reasons set forth above, we conclude that the allegations directed against English sound in "healing art malpractice," falling within the realm of her professional nursing responsibilities, both in her identified capacity as director of nursing and based upon her own nursing duties in the care of Jones, and are independent of and not proscribed by the Nursing Home Care Act. Accordingly, we reverse the judgment of the circuit court of Lake County and remand this cause to the circuit court for further proceedings.

Reversed and remanded.

HUTCHINSON and BURKE, JJ., concur.