WILLIAM C. PALMER, Plaintiff-Appellant, v. CHICAGO PARK DISTRICT, Defendant-Appellee.

First District (4th Division)   No. 1—93—3255

Opinion filed December 28, 1995.

Sheldon A. Harris, of Chicago, for appellant.

Sandra M. Toro, of Chicago Park District, of Chicago, for appellee.

JUSTICE S. O'BRIEN delivered the opinion of the court:

Plaintiff, William C. Palmer, filed a second amended complaint to recover damages for injuries allegedly caused by willful and wanton misconduct on the part of defendant, the Chicago Park District. The trial court dismissed plaintiff's second amended complaint with prejudice pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). Plaintiff filed a motion to reconsider, arguing the court should allow him to file a third amended complaint, which he attached to the motion. The trial court denied plaintiff's motion, although the court did allow the third amended

complaint to "stand in substitution of the [s]econd [a]mended [c]omplaint *** to complete the record for review." Plaintiff appeals the trial court's order denying him leave to file the third amended complaint. We reverse and remand.

■ The trial court has broad discretion in ruling upon a motion to amend pleadings, and its ruling on the matter will not be disturbed absent an abuse of discretion. (*In re Estate of Nicholson* (1994), 268 Ill. App. 3d 689, 695, 644 N.E.2d 47.) To determine whether the trial court abused its discretion in this case, we consider four factors: (1) whether the proposed third amended complaint cures the defective pleading by stating a cause of action sufficient to withstand a section 2—615 motion to dismiss; (2) whether defendant would sustain prejudice or surprise if plaintiff is allowed to file his proposed third amended complaint; (3) whether the proposed third amended complaint is timely; and (4) whether plaintiff had previous opportunities to amend his complaint. *Nicholson*, 268 Ill. App. 3d at 695.

We begin our analysis by determining whether plaintiff's third amended complaint states a cause of action sufficient to withstand a section 2—615 motion to dismiss. In ruling on a section 2—615 motion to dismiss, the court accepts as true all well-pleaded facts and all reasonable inferences that can be drawn therefrom. (*Kolegas v. Heftel Broadcasting Corp.* (1992), 154 Ill. 2d 1, 8-9, 607 N.E.2d 201.) The court should not dismiss a complaint under section 2—615 unless it clearly appears no set of facts could be proved under the pleadings that would entitle plaintiff to relief. (*Johnson v. George J. Ball, Inc.* (1993), 248 Ill. App. 3d 859, 863, 617 N.E.2d 1355.) In making such a determination, the court must interpret the allegations of the complaint in the light most favorable to plaintiff. *Kolegas*, 154 Ill. 2d at 9.

Plaintiff's third amended complaint alleges that on July 24, 1992, defendant had under its supervision, maintenance and control a park known as "331 Playlot Park" (hereinafter playlot) located on the southwest corner at the intersection of 66th Street and Woodlawn Avenue in the City of Chicago. On July 24, 1992, and for three months prior thereto, a wire mesh fence 30 feet long and 3 feet high had been lying on its side "along the westerly edge of the playlot starting at approximately [35] feet south of the south curb of 66th Street and running [30] feet south along the west sidewalk of Woodlawn Avenue." Sections of the wire fencing had torn and were lying "in the form of loops" on the ground and sidewalk. The fallen fence was supposed to run along the westerly edge of the playlot to protect children from the dangers of traffic on Woodlawn Avenue.

On July 24, 1992, plaintiff and his two-year-old daughter, Brit-

tany, were using the playlot. Brittany ran from the playlot through the fallen fence area into Woodlawn Avenue. Plaintiff ran after her to stop her from entering the street. However, he tripped on the fallen fence and caught his foot in a loop of the torn metal lying on the perimeter of the lot. As a result, plaintiff fractured his right leg.

Plaintiff alleges that defendant assigned employees to daily inspect, maintain and repair the playlot. Therefore, defendant knew or should have known about the fallen fence. Plaintiff complains defendant committed willful and wanton misconduct by failing to protect against, warn of, or repair the fence.

Defendant responds that to plead a sufficient cause of action for willful and wanton misconduct, plaintiff must allege the existence of a duty owed by defendant to plaintiff. (See *Bialek v. Moraine Valley Community College School District 524* (1994), 267 Ill. App. 3d 857, 860, 642 N.E.2d 825.) Defendant argues it owed no duty to plaintiff to protect against, warn of, or repair the fence, because the condition of the fence was open and obvious.

■ However, in *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223, a negligence action, our supreme court rejected the traditional rule that an owner or occupier of land has no duty under any circumstances to protect entrants from conditions on his land that are open and obvious. Instead, in determining whether a duty exists, a court must inquire into whether the landowner "should reasonably anticipate injury to those entrants on his premises who are generally exercising reasonable care for their own safety, but who may reasonably be expected to be distracted *** or forgetful of the condition after having momentarily encountered it." (*Ward*, 136 Ill. 2d at 152.) Further, *Ward* emphasized that the following traditional factors must be taken into account in assessing the scope of a landowner's duty: the likelihood of injury and the possible serious nature of such an injury; the magnitude of the burden of guarding against the injury; and the consequences of placing that burden upon the landowner. *Ward*, 136 Ill. 2d at 151.

In *Ward*, plaintiff bought a large bathroom mirror at a K mart store. After paying for the mirror, plaintiff picked it up and began to exit the store through the "customer door." Two five-foot-tall concrete posts stood just outside the door. (*Ward*, 136 Ill. 2d at 136.) Because the mirror blocked his view as he exited the store, plaintiff did not see the posts and walked into one of them, injuring himself. (*Ward*, 136 Ill. 2d at 138.) Plaintiff acknowledged that he had walked past the post when entering the store and admitted he was at least "subconsciously" aware of its presence. *Ward*, 136 Ill. 2d at 137.

The supreme court found K mart owed plaintiff a duty to protect

him from the risk of colliding with the post, holding that one could reasonably foresee a customer shopping in the K mart might, even in the exercise of reasonable care, momentarily forget the presence of the posts he previously encountered by entering through the customer door. (*Ward*, 136 Ill. 2d at 154.) One could also reasonably foresee that a customer carrying a large item he had bought in the store might be distracted and fail to see the post upon exiting through the door. (*Ward*, 136 Ill. 2d at 154.) Finally, the court noted the magnitude of the burden of guarding against the injury would be slight; a simple warning or relocation of the post may have sufficed. *Ward*, 136 Ill. 2d at 154.

In *Bialek v. Moraine Valley Community College School District 524* (1994), 267 Ill. App. 3d 857, we addressed whether *Ward* applies in an action alleging willful and wanton misconduct. Bialek and some friends drove onto Moraine's Ridgeland campus and set up a field on which to play football. (*Bialek*, 267 Ill. App. 3d at 858.) Bialek and his friends decided to play in a corner of the field that contained a single steel goalpost. A metal bracket protruded from one upright of the goalpost. (*Bialek*, 267 Ill. App. 3d at 858.) Bialek and his friends did not use the goalpost as a goalpost; rather, they used it as a boundary marker. (*Bialek*, 267 Ill. App. 3d at 858.) At some point during the game, Bialek ran into the post and metal bracket and suffered severe injuries to his face and groin. *Bialek*, 267 Ill. App. 3d at 858.

Bialek filed suit against Moraine, alleging that Moraine was willful and wanton in maintaining its campus in that (a) it failed to remove the goalpost and bracket from its premises; (b) it failed to warn him of the goalpost and bracket; and (c) it failed to pad the goalpost and bracket. (*Bialek*, 267 Ill. App. 3d at 859.) A jury returned a verdict for Bialek. On appeal, Moraine argued that the trial court should have granted its motion for a directed verdict because it did not owe Bialek a duty to remedy an open and obvious condition on its premises. (*Bialek*, 267 Ill. App. 3d at 860.) Bialek countered that the so-called "distraction doctrine" set forth in *Ward* conferred a duty upon Moraine. *Bialek*, 267 Ill. App. 3d at 860.

In our discussion of the issue, we cited the well-established rule that a plaintiff cannot recover for either ordinary negligence *or* willful and wanton misconduct unless defendant has breached a duty owed to plaintiff. (*Bialek*, 267 Ill. App. 3d at 862.) We reasoned that the analysis of whether a duty exists does not differ simply because the conduct for which defendant is liable is willful and wanton, rather than negligent. (*Bialek*, 267 Ill. App. 3d at 862.) Therefore, we held the distraction doctrine applies in cases where willful and wanton conduct is alleged. (*Bialek*, 267 Ill. App. 3d at 862.) However, we

determined that Bialek was not distracted at the time of his injury, and therefore Moraine owed him no duty to remedy the open and obvious condition presented by the goalpost. *Bialek*, 267 Ill. App. 3d at 864.

▇ In the present case, plaintiff alleges in his third amended complaint that on July 24, 1992, he and his two-year-old daughter Brittany were using a playlot supervised, maintained and controlled by defendant. At some point during that day, plaintiff chased after Brittany to prevent her from entering Woodlawn Avenue, and in the process he injured himself when he caught his foot in the fallen fence. When upright, the fence protected children from running onto Woodlawn Avenue. Plaintiff also pleads that the fence had been down for three months prior to July 24, 1992, and that defendant should have known about the fence's condition because it assigned employees to daily inspect and maintain the playlot. Taking these well-pleaded facts as true for purposes of the section 2—615 motion to dismiss only, we think defendant Chicago Park District could reasonably foresee that with the fence down, a child might attempt to run onto Woodlawn Avenue, and the parent chasing after his child would be so distracted as to momentarily forget about the fence underfoot. Therefore, plaintiff's third amended complaint pleads sufficient facts to allege that defendant owed him a duty under the distraction doctrine.

▇ Next, defendant argues plaintiff's third amended complaint does not plead sufficient facts to allege that its failure to protect against, warn of, or repair the fence constituted willful and wanton misconduct. Section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) states that a local public entity, such as defendant Chicago Park District, is not liable for an injury on public property intended or permitted to be used for recreational purposes "unless such local entity *** is guilty of willful and wanton conduct proximately causing such injury." (745 ILCS 10/3—106 (West 1992).) Section 1—210 of the Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." (745 ILCS 10/1—210 (West 1992).) Our supreme court has explained that willful and wanton misconduct either must be intentional or committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent the danger. *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469, 415 N.E.2d 1015;

288

see also *Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, 274, 641 N.E.2d 402.

Defendant cites *Majewski v. Chicago Park District* (1988), 177 Ill. App. 3d 337, 532 N.E.2d 409, and *Lester v. Chicago Park District* (1987), 159 Ill. App. 3d 1054, 513 N.E.2d 72, in support of the argument that its conduct was not willful and wanton. In *Majewski*, plaintiff brought an action seeking damages from defendant Chicago Park District for injuries he sustained falling on broken glass while playing touch football in Kilbourn Park. Plaintiff alleged that defendant committed willful and wanton misconduct by: (1) failing to post signs around the football field warning of the presence of broken glass; and (2) failing to inspect, and remove debris from, the field. (*Majewski*, 177 Ill. App. 3d at 341.) The trial court dismissed the complaint for failure to state a cause of action. We affirmed, holding that plaintiff's failure to plead facts showing why defendant knew or should have known about the broken glass on the football field required dismissal of the complaint because it contained no facts demonstrating a conscious disregard for the safety of others. *Majewski*, 177 Ill. App. 3d at 341.

In *Lester*, plaintiff brought an action seeking damages from defendant Chicago Park District for injuries he sustained while playing softball in Hermosa Park. Plaintiff alleged that defendant acted willfully and wantonly in causing and knowingly permitting ruts and holes to exist on the park's playing field. (*Lester*, 159 Ill. App. 3d at 1055-56.) The complaint also alleged that after causing the ruts and holes, defendant "insufficiently and without proper materials" refilled the ruts and holes, thereby knowingly creating a danger to persons on the premises. (*Lester*, 159 Ill. App. 3d at 1056.) The trial court dismissed the complaint for failure to state a cause of action. We affirmed, holding that "the admitted fact [defendant] undertook rehabilitative action to fill in the various holes and ruts in the field indicated a concern for possible injuries, and certainly does not as a matter of law rise to the level of 'utter indifference' or 'conscious disregard' for the safety of lives." *Lester*, 159 Ill. App. 3d at 1059.

■ In contrast to *Majewski* and *Lester*, plaintiff here does plead sufficient facts in his third amended complaint to allege that defendant committed willful and wanton misconduct. Common sense dictates that defendant's employees, who inspected the playlot daily, simply could not have missed seeing a fence *3 feet high and 30 feet long* that had been lying on its side on the westerly edge of the playlot for a three-month period prior to plaintiff's injury. Thus, unlike *Majewski*, plaintiff pleads sufficient facts to allege that defendant knew or should have known about the fence. Further, unlike *Lester*,

plaintiff pleads defendant took no corrective action to repair or warn about the fence, even though with the fence down defendant should have known a danger existed that a parent could injure himself while trying to stop his child from entering Woodlawn Avenue. Plaintiff's third amended complaint sufficiently states a cause of action for willful and wanton misconduct by pleading that defendant knew or should have known of the dangers posed by the fallen fence and yet failed to implement remedial measures. See *O'Brien*, 83 Ill. 2d at 469; *Ziarko*, 161 Ill. 2d at 274.

Thus, plaintiff's third amended complaint cures the defective pleading by stating a cause of action. Further, the third amended complaint was timely and would not have surprised or prejudiced defendant. Therefore, we find the trial court erred when it denied plaintiff leave to file his third amended complaint.

For the foregoing reasons, we reverse the trial court's order denying plaintiff leave to file his third amended complaint, and remand for further proceedings.

Reversed and remanded.

HOFFMAN, P.J., and CAHILL, J., concur.