No. 2-10-0045     Filed: 12-20-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THOMAS J. VILARDO, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 08--L--95 |
| | ) | |
| BARRINGTON COMMUNITY SCHOOL | ) | |
| DISTRICT 220, | ) | Honorable |
| | ) | Christopher C. Starck, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BURKE delivered the opinion of the court:

An "L" screen is a free-standing, L-shaped structure used in baseball batting practice to protect the pitcher. While behind the screen, the pitcher throws the ball through a cutout portion of the screen, and the screen shields the pitcher from balls hit toward him. Defendant, Barrington Community School District 220, operates a baseball field with batting cages and L screens at Barrington High School.

Plaintiff, Thomas J. Vilardo, took his son, Michael, to defendant's baseball field to use a batting cage. Plaintiff sat on a bucket behind an L screen and pitched to Michael. Michael hit several balls to the screen, where they bounced harmlessly to the ground. However, one ball struck the screen, passed through the mesh, and struck plaintiff's face, causing injury.

Plaintiff filed a two-count complaint, alleging claims of negligence and willful and wanton conduct based on defendant providing defective equipment. The trial court dismissed with prejudice

the negligence claim pursuant to section 2--619(a)(9) of the Code of Civil Procedure (Code) (see 735 ILCS 5/2--619(a)(9) (West 2008)) on the ground that section 3--106 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3--106 (West 2008)) immunized defendant from liability. The count alleging willful and wanton conduct was dismissed without prejudice under section 2--615 (see 735 ILCS 5/2--615 (West 2008)).

Plaintiff filed an amended complaint alleging only willful and wanton conduct. The trial court granted defendant summary judgment on the amended complaint (see 735 ILCS 5/2--1005 (West 2008)).

Plaintiff appeals the dismissal of the negligence count and the summary judgment entered for defendant on the willful-and-wanton-conduct count. Defendant asserts that plaintiff forfeited review of the negligence claim by failing to replead it or otherwise incorporate it by reference in the amended complaint, but plaintiff responds that the dismissal with prejudice barred him from doing so. Defendant further argues that, even if plaintiff did not forfeit the negligence claim, the dismissal should be affirmed because the claim lacks merit. Defendant also contends that summary judgment was proper. We agree with defendant. We hold that (1) plaintiff procedurally defaulted any challenge to the dismissal of the negligence count, which in any event lacks merit; and (2) the trial court did not err in granting defendant summary judgment on the willful-and-wanton-conduct count. We affirm.

FACTS

On January 31, 2008, plaintiff filed a two-count complaint. Plaintiff alleged that, on June 25, 2007, defendant operated a batting cage in Barrington and owed plaintiff a duty to operate the premises safely, but had allowed the premises to become dangerous and knew of the dangerous

condition. Specifically, plaintiff alleged that defendant (1) improperly operated, managed, maintained, and controlled the premises; (2) allowed and permitted a hole to be present in the net protecting the pitcher; (3) failed to make a reasonable inspection of the premises and the net when defendant knew or should have known that such an inspection was necessary to prevent plaintiff's injury; and (4) failed to warn plaintiff of the net's dangerous condition when defendant knew or should have known that such a warning was necessary to prevent plaintiff's injury. Plaintiff alleged that, as a direct proximate result of defendant's conduct, plaintiff was struck and injured by a baseball. The two counts of the complaint were nearly identical except count I characterized defendant's conduct as negligence and count II characterized defendant's conduct as willful and wanton.

On April 22, 2008, defendant filed a combined motion to dismiss under section 2--619.1 of the Code. See 735 ILCS 5/2--619.1 (West 2008) (providing for combined motions seeking relief under sections 2--615 and 2--619). Defendant argued that both counts should be dismissed under section 2--619 of the Code in that section 3--106 of the Act was affirmative matter defeating the claims. Immunity under the Act is affirmative matter properly raised in a section 2--619(a)(9) motion to dismiss. Arteman v. Clinton Community Unit School District No. 15, 198 Ill. 2d 475, 479 (2002).

Defendant alternatively argued that the willful-and-wanton-conduct count should be dismissed under section 2--615 for failing to state a claim. The trial court dismissed with prejudice the negligence count under section 2--619(a)(9), and the court dismissed without prejudice the willful-and-wanton-conduct count under section 2--615.

On August 18, 2008, plaintiff filed an amended complaint alleging that defendant engaged in willful and wanton conduct. Specifically, plaintiff asserted that defendant knew there was a hole in the protective screen, which created a dangerous condition for persons using the premises, and that defendant willfully and wantonly failed to address this dangerous condition. Defendant allegedly used the batting cage daily, knew of the hole in the screen, left the gate to the facility unlocked, and knew that the public used the batting cage and protective screen regularly. The amended complaint alleged that defendant committed the following willful and wanton acts and omissions: (1) improperly operated, managed, maintained, and controlled the premises; (2) allowed and permitted a hole to be present in the net protecting the pitcher; (3) failed to make a reasonable inspection of the premises and the net when defendant knew or should have known that such an inspection was necessary to prevent plaintiff's injury; (4) failed to warn plaintiff of the net's dangerous condition when defendant knew or should have known that such a warning was necessary to prevent plaintiff's injury; and (5) failed to lock the gate to the facility. Plaintiff alleged that, as a direct proximate result of defendant's willful and wanton conduct, plaintiff was struck and injured by a baseball.

Defendant moved for summary judgment, arguing that sections 3--102 and 2--201 of the Act provided immunity from liability and that defendant did not proximately cause plaintiff's injury. Plaintiff testified in his deposition that he had used the batting cages at Barrington High School several times before the date of the injury. Plaintiff estimated that he had used the cages 50 times in three years. Plaintiff used the cages on evenings and weekends to help his son warm up before games. Plaintiff used the cages on the date of the injury to help his son warm up before a game that was to be held at a field nearby. Plaintiff testified that he had extensive experience using pitcher's

nets at defendant's school and at other locations, and plaintiff had not experienced any problems with defendant's nets before the injury.

Plaintiff testified that he began using a batting cage around 4 p.m. on the date of the incident. A summer baseball league game was being played at the time. Neither plaintiff nor his son inspected the screen before using it. Plaintiff stepped behind the screen and positioned himself so his entire body was behind it. Plaintiff sat on a bucket of balls. Plaintiff did not see any holes in the net, which was about 20 to 25 feet from the batter.

Plaintiff began pitching balls to his son. Plaintiff threw about 10 pitches, which he estimated to be 60 to 70 miles per hour. Plaintiff's son hit the balls, some of which struck the screen. The last pitch was hit straight back toward plaintiff and struck him in the left eye.

Coach Wisniewski testified that he was a teacher and baseball coach employed by defendant. Wisniewski testified that it is standard practice for coaches to inspect the pitcher's nets before they are used. If he saw a hole or tear in a net, he would not allow the students to use the net, and the net would be moved to the side. Wisniewski denied seeing a baseball go through the net during his four-year employment by defendant. Wisniewski also denied seeing someone hit in the face by a baseball while using a pitcher's net.

Wisniewski explained that players using the net had to wear helmets and stand behind the net, which was to be placed a safe distance from the batter. Players who noticed any problems with the net were instructed to advise the coach. Wisniewski also explained that the net is usually placed 50 to 60 feet from the batter. Barrington High School players in the summer baseball league used the batting cages and fields during the summer baseball season. The players use the batting cages before and during league games. Wisniewski coached during the 2007 summer baseball season. The

players would have used the nets to warm up for the game that was being played when plaintiff was injured. There were no problems with the nets used by the players on the date of the incident.

Wisniewski testified that he did not witness plaintiff's injury, but parents at the game told him about it. Wisniewski believed that plaintiff was hit by the ball because he had not positioned himself completely behind the net. Wisniewski looked at the net after the incident and saw no hole or tear in the net.

Coach Hawrysko testified that he had been a physical education teacher and a baseball coach at Barrington High School for 11 years. Hawrysko denied seeing holes in the net before the incident. He stated that the only repairs he made to the net were securing the ties that fastened the net to the frame. Hawrysko stated that he would buy a new net rather than repair a net with a hole. A net with a hole would be taken out of service. Hawrysko admitted that a hole in the net could cause serious injury. He denied ever seeing a ball go through a net during his 11-year employment at the high school. Hawrysko explained that sitting behind the net while pitching was inadvisable because the pitcher would be too close to the net to move quickly.

Hawrysko was on his way to the high school when plaintiff was injured. Wisniewski told Hawrysko about the incident. Hawrysko went to the batting cage and noticed a tear at the top of the net. The net was double-sided, and the tear was on the batter's side, not the pitcher's side. Hawrysko denied knowing about a hole before the incident. The net was repaired by tightening the fasteners around the pole. Hawrysko testified that Wisniewski told him that his players had used the same net before the game and that there were no problems with the net at that time.

Michael testified that he and plaintiff used defendant's batting cages about 30 times in 2007. Michael denied inspecting the nets before using them. On the date of the incident, Michael had a

game in Mt. Prospect, and he used defendant's cage to warm up because Barrington High School was on the way. Plaintiff and Michael waited for the high school players to finish with the cages before using one.

Michael testified that plaintiff sat on a bucket of balls behind the net and began pitching to Michael. Plaintiff was three to five feet away from the net. Plaintiff pitched 10 to 20 balls about 50 to 60 miles per hour. Michael struck some of the balls to the net, where they fell to the ground. Michael testified that plaintiff pitched a ball "right down the middle," and Michael hit it so that it went "right through the net." Michael denied seeing any problems with the net before the incident. Michael said that the ball went through a hole in the net and that he did not see the hole until after plaintiff was struck by the ball. The hole was not very big but large enough for a ball to pass through. Michael was unaware of the hole before plaintiff began pitching to him.

On September 9, 2009, the trial court granted defendant summary judgment. The court noted that the willful-and-wanton-conduct count had been allowed to go forward so discovery could reveal whether defendant had actual or constructive notice of any defect in the screen. Plaintiff did not dispute that a coach employed by defendant had used the screen a short time before plaintiff used it and that the coach did not observe any defect. Further, neither plaintiff nor his son observed any defect when they began using the screen. The court explained that, because there was no evidence that the alleged defect existed at any time before the injury, defendant could not have had notice, which is necessary to sustain a claim of willful and wanton conduct.

On October 6, 2009, plaintiff filed a motion to reconsider. The court denied the motion and this timely appeal followed.

ANALYSIS

On appeal, plaintiff argues that (1) the trial court erred in dismissing the negligence count and (2) a genuine issue of material fact exists regarding whether defendant's conduct was willful and wanton. Defendant asserts that plaintiff forfeited review of the negligence claim by failing to replead it or otherwise incorporate it by reference in the amended complaint, but plaintiff responds that the dismissal with prejudice barred him from doing so. Defendant further argues that, even if plaintiff did not forfeit the negligence claim, the dismissal should be affirmed because the claim lacks merit. We agree with defendant that the claim is forfeited and lacks merit. We further agree with defendant that the trial court did not err in granting summary judgment.

### A. Negligence

Plaintiff argues that the trial court erroneously dismissed the negligence claim set forth in the original complaint. Plaintiff omitted the claim and did not refer to it in any way in the amended complaint. Defendant argues that plaintiff has forfeited any objection to the trial court order dismissing the negligence count. The supreme court has set forth the circumstances under which a party who files an amended complaint forfeits any objection to the trial court's rulings on any former complaints. Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp., 96 Ill. 2d 150, 153 (1983). The court explained that, " '[w]here an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn.' " Foxcroft, 96 Ill. 2d at 154, quoting Bowman v. County of Lake, 29 Ill. 2d 268, 272 (1963). The rule is supported by significant policy considerations:

> " 'In particular is the interest in the efficient and orderly administration of justice. It is expected that a cause will proceed to trial on the claims as set forth in the final amended complaint.

This procedure ensures that the trial judge will be aware of the points in issue, and can properly rule on objections at trial. To allow a party to also introduce allegations related in earlier pleadings would result in confusion and impose an unnecessary burden upon the trial judge. No interest would be served by requiring the judge to speculate as to which legal theories or claims a party intends to advance during trial.

The complaint notifies the defendant of the alleged causes of action and theories of recovery. When a complaint is amended, without reference to the earlier allegations, it is expected that these allegations are no longer at issue. Defendants would be disadvantaged by a rule which would, in effect, permit a plaintiff to proceed to trial on different issues contained in separate complaints. In contrast, we perceive no undue burden in requiring a party to incorporate in its final pleading all allegations which it desires to preserve for trial or review.' " Childs v. Pinnacle Health Care, LLC, 399 Ill. App. 3d 167, 176 (2010), quoting Foxcroft, 96 Ill. 2d at 154.

To avoid forfeiture under the Foxcroft rule, a party wishing to preserve a challenge to an order dismissing with prejudice fewer than all of the counts in his complaint has several options. Childs, 399 Ill. App. 3d at 176. First, the plaintiff may stand on the dismissed counts and argue the matter at the appellate level. Childs, 399 Ill. App. 3d at 176. Second, the plaintiff may file an amended complaint realleging, incorporating by reference, or referring to the claims set forth in the prior complaint. Childs, 399 Ill. App. 3d at 176; see also Tabora v. Gottlieb Memorial Hospital, 279 Ill. App. 3d 108, 114 (1996) (noting that "[a] simple paragraph or footnote in the amended pleadings notifying [the] defendants and the court that [the] plaintiff was preserving the dismissed portions of his former complaints for appeal" is sufficient to protect against forfeiture under Foxcroft). Third,

a party may perfect an appeal from the order dismissing fewer than all of the counts of his or her complaint prior to filing an amended pleading that does not include reference to the dismissed counts. Childs, 399 Ill. App. 3d at 177. Plaintiff pursued none of these options, and thus has forfeited review of the negligence count in this appeal.

Plaintiff argues that we should depart from the Foxcroft rule for two reasons. First, plaintiff asserts that, because the negligence claim was dismissed with prejudice, he was barred from proceeding to trial on that count, yet he could not appeal the order, as it was not final and appealable when the willful-and-wanton-conduct claim was pending. This argument was considered and rejected in Kincaid v. Parks Corp., 132 Ill. App. 3d 417, 419 (1985) (appellate court rejects position that Foxcroft must be limited to cases where a count is dismissed but leave to replead the count is granted). We agree with the rationale of Kincaid and decline to depart from its holding.

Second, plaintiff argues in passing that we should disregard the Foxcroft forfeiture issue because defendant did not raise it when plaintiff moved for reconsideration of the dismissal of the negligence count and the entry of summary judgment. This section of plaintiff's reply brief is only one sentence and contains absolutely no citations to legal authority whatsoever. Supreme Court Rule 341(h)(7) provides that an appellant's brief must contain "the contentions of the appellant and the reasons therefor, with citations of the authorities and the pages of the record relied on." 210 Ill. 2d R. 341(h)(7). If a point is not argued, it is forfeited. 210 Ill. 2d R. 341(h)(7). "The well-established rule is that mere contentions, without argument or citation of authority, do not merit consideration on appeal." People v. Hood, 210 Ill. App. 3d 743, 746 (1991). "Contentions supported by some argument but by absolutely no authority do not meet the requirements of Supreme Court Rule 341([h])(7)." Hood, 210 Ill. App. 3d at 746. "A reviewing court is entitled to have the issues clearly

defined with pertinent authority cited and is not simply a depository into which the appealing party may dump the burden of argument and research." Hood, 210 Ill. App. 3d at 746. Accordingly, we may treat plaintiff's position as having been procedurally defaulted for failure to cite authority.

Even if we were to ignore plaintiff's forfeiture of the negligence claim, we would conclude that the trial court did not err in dismissing it. The duty of a local public entity, such as a school district, is limited by section 3--102(a) of the Act, which states as follows:

"(a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3--102(a) (West 2008).

Defendant argues that section 3--106 of the Act immunized it from plaintiff's negligence claim. Section 3--106 provides that "[n]either a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings[,] or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3--106 (West 2008).

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. Nelson v. Northeast Illinois Regional Commuter R.R. Corp., 364 Ill. App. 3d 181, 189 (2006). The most reliable indication of legislative intent is the language of the statute itself. In interpreting a statutory provision, words should be given their plain and ordinary meaning. Because the construction of a statute is a matter of law, review is de novo. Nelson, 364 Ill. App. 3d at 189.

Plaintiff argues that section 3--106 applies only to a condition of public property while this case involves safety equipment rather than public property. We agree with defendant that plaintiff's argument is flawed because it is based on the faulty assumption that the presence of the batting cage and protective screen does not constitute a "condition" under section 3--106.

In McCuen v. Peoria Park District, 163 Ill. 2d 125 (1994), our supreme court addressed the meaning of the word "condition" as used in section 3--106 of the Act, which immunizes local public entities from liability in negligence based on "the existence of a condition of any public property intended or permitted to be used for recreational purposes." 745 ILCS 10/3--106 (West 2008). While visiting a park owned and operated by the Peoria Park District, a park district employee told McCuen to climb onto a hayrack to take a mule-drawn hayrack ride. McCuen, 163 Ill. 2d at 126. While the employee was harnessing the mules, he slapped a strap over one of the mules, causing the mule team to suddenly bolt and run off with the driverless hayrack. McCuen, 163 Ill. 2d at 126-27. McCuen was thrown to the ground and injured. She sued the park district. McCuen, 163 Ill. 2d at 127.

The issue on appeal was whether the driverless hayrack was a "condition" of public property within the meaning of section 3--106. Our supreme court held as follows:

"We do not believe that a driverless hayrack is a condition of public property within the meaning of section 3--106. Plaintiffs do not claim that the hayrack itself was dangerous, defective or negligently maintained, only that the mule team was not handled properly by the park district employee. The handling of the mule team does not relate to the condition of the hayrack itself. If otherwise safe property is misused so that it is no longer safe, but the property itself remains unchanged, any danger presented by the property is due to the misuse of the property and not to the condition of the property." McCuen, 163 Ill. 2d at 129.

McCuen illustrates that section 3--106 immunizes a defendant from liability in negligence where the property itself is unsafe, but that section 3--106 does not immunize the defendant for unsafe activities conducted upon otherwise safe property. Also, section 3--106 applies to facilities or structures that increase the usefulness of public property intended for recreational purposes. Sylvester v. Chicago Park District, 179 Ill. 2d 500, 508 (1997) (walkways and parking lots adjacent to stadium increase recreational usefulness of the facility and therefore qualify as property intended to be used for recreational purposes). Here, the batting cage and the protective pitcher's screen enhanced the usefulness of the baseball fields, which are intended for recreational purposes. Plaintiff's original complaint alleged that defendant negligently maintained the batting cage and net, allowed a hole to exist in the net, failed to inspect the net, and failed to warn of the dangerous condition in the net. Plaintiff did not allege that defendant proximately caused the injury by misusing otherwise safe equipment. Thus, section 3--106 immunized defendant from liability in negligence based on "the existence of a condition of any public property intended or permitted to be used for recreational purposes." 745 ILCS 10/3--106 (West 2008). The trial court did not err in dismissing the negligence claim.

Plaintiff relies exclusively on Gerrity v. Beatty, 71 Ill. 2d 47, 52 (1978), in which our supreme court held that school districts have a common-law duty to provide safety equipment to students when engaged in activities that may be dangerous. Plaintiff argues that the common-law duty extends to providing nondefective protective pitching screens.

Gerrity and its progeny held that school districts have a duty to provide safety equipment, and the School Code offers no immunity from allegations of negligent failure to provide such equipment. However, the tort immunity provisions of the School Code and the Act are " 'independent enactments.' " Arteman, 198 Ill. 2d at 483, quoting Cooney v. Society of Mt. Carmel, 75 Ill. 2d 430, 434 (1979). Thus, the supreme court has held that if the Act immunizes a school district from liability for negligence while the School Code does not, the Act applies. To rule otherwise "impermissibly elevates a common law duty over an applicable statutory immunity." Arteman, 198 Ill. 2d at 487. Accordingly, we reject plaintiff's contention that Gerrity and its progeny defeat defendant's tort immunity defense under the Act.

### B. Willful and Wanton Conduct

Next we consider plaintiff's argument that the trial court erroneously granted defendant summary judgment on the willful-and-wanton-conduct count. The purpose of summary judgment is not to try a question of fact but, rather, to determine whether a genuine issue of material fact exists. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 42-43 (2004). Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 2008); Klitzka v. Hellios, 348 Ill. App. 3d 594, 597 (2004). In reviewing a grant of summary judgment, this

court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the nonmoving party. Williams v. Manchester, 228 Ill. 2d 404, 417 (2008). Where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact. Espinoza v. Elgin, Joliet & Eastern Ry. Co., 165 Ill. 2d 107, 114 (1995). If a party moving for summary judgment introduces facts that, if not contradicted, would entitle him to a judgment as a matter of law, the opposing party may not rely on his pleadings alone to raise issues of material fact. Klitzka, 348 Ill. App. 3d at 597, citing Hermes v. Fischer, 226 Ill. App. 3d 820, 824 (1992).

The summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit. Adams, 211 Ill. 2d at 43. However, summary judgment is a drastic means of disposing of litigation and should not be granted unless the movant's right to judgment is clear and free from doubt. Forsythe v. Clark USA, Inc., 224 Ill. 2d 274, 280 (2007).

In this case, the trial court concluded that plaintiff pleaded sufficient facts to establish a duty under section 3--102(a) for defendant to protect plaintiff. However, defendant asserted and the trial court agreed that defendant was not liable for the injury, because plaintiff could not prove that defendant had actual or constructive notice of "the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." See 745 ILCS 10/3--102(a) (West 2008).

Section 1--210 of the Act states that " '[w]illful and wanton conduct' as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their

property. This definition shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity under this Act." 745 ILCS 10/1--210 (West 2008). Plaintiff's theory is that defendant's failure to discover the alleged defect in the protective screen amounts to willful and wanton conduct that is not immunized by section 3--106 of the Act.

Willful and wanton acts show "actual or deliberate intent to harm" or, if not intentional, show "an utter indifference to or conscious disregard for a person's own safety or the safety or property of others." Pfister v. Shusta, 167 Ill. 2d 417, 421 (1995). Plaintiff does not allege that defendant intentionally harmed him. Rather, plaintiff argues that genuine issues of material fact exist regarding whether defendant acted with conscious disregard for his well-being. A nonintentional willful or wanton act is committed under circumstances showing a reckless disregard for the safety of others such as, for example, when a party fails, after knowledge of an impending danger, to exercise ordinary care to prevent the danger or fails to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. American National Bank & Trust Co. v. City of Chicago, 192 Ill. 2d 274, 285 (2000). " 'More than mere inadvertence or momentary inattentiveness which may constitute ordinary negligence is necessary for an act to be classified as wilful and wanton misconduct.' " Oelze v. Score Sports Venture, LLC, 401 Ill. App. 3d 110, 122 (2010), quoting Stamat v. Merry, 78 Ill. App. 3d 445, 449 (1979). The party committing the willful and wanton act or failure to act " 'must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury.' " Oelze, 401 Ill. App. 3d at 122-23, quoting Bartolucci v. Falleti, 382 Ill. 168, 174 (1943). Whether

conduct amounts to willful and wanton is generally a question of fact for the jury to determine. Oelze, 401 Ill. App. 3d at 123.

In this case, the undisputed evidence showed that defendant had no reason to suspect that the net would fail in the manner plaintiff claims. The coaches, Wisniewski and Hawrysko, each testified that he had never seen a ball pass through the net. Wisniewski testified that he had used the same net moments before plaintiff used it and did not see a hole or any other defect that would have alerted him that the net might be dangerous. Most importantly, plaintiff admitted that he did not see a hole or any other defect in the net before he used it. Michael's testimony was consistent on this point as well. Michael claimed that a hole must have existed before the injury, but he admitted that he did not see a defect before plaintiff used the net. Defendant was entitled to summary judgment on the willful-and-wanton-conduct claim because there was no genuine issue of material fact as to whether defendant's lack of knowledge regarding the allegedly defective net was reckless.

Plaintiff's reliance on Murray v. Chicago Youth Center, 224 Ill. 2d 213 (2007), is misplaced. In Murray, the plaintiff and his mother sued the Chicago Board of Education and others to recover for the plaintiff's injuries from a mini-trampoline accident. The trial court granted the defendants' motion for summary judgment, holding the defendants immune from liability under sections 2--201 and 3--108(a) of the Act. The supreme court reversed, holding that the claim of willful and wanton conduct survived the summary judgment motion in light of the well-known risk of using a mini-trampoline and the defendants' admission that they provided no training or spotters for the plaintiff. Murray, 224 Ill. 2d at 246. The court effectively held as a matter of law that the complaint alleged sufficient facts of the defendant's willful and wanton conduct to create a jury question. Murray, 224 Ill. 2d at 245. This case is distinguishable, as plaintiff has not alleged facts that any of defendant's

employees knew or should have known of the risk of a ball passing through the protective screen and injuring plaintiff.

Plaintiff's reliance on Kirwan v. Lincolnshire-Riverwoods Fire Protection District, 349 Ill. App. 3d 150 (2004), also is misplaced. In Kirwan, the decedent died from a violent reaction to a food allergy while dining at a restaurant. The complaint alleged that the emergency medical personnel who responded to the 9-1-1 call had acted willfully and wantonly in failing to treat the decedent faster. The caller had told the 9-1-1 dispatcher that the decedent was having an allergic reaction and, as a result, was having a hard time breathing and staying awake. The caller further stated that the decedent's throat was closing and that she was turning red and wheezing. The 9-1-1 dispatcher contacted the defendants and stated that an ambulance was needed for an allergic reaction and that the decedent's throat was closing. According to the complaint, prior to arriving at the scene, the defendants knew that the decedent was " 'in a life threatening situation due to an allergic reaction to walnuts.' " Kirwan, 349 Ill. App. 3d at 152. The ambulance arrived at the restaurant about five minutes after the 9-1-1 call.

The complaint in Kirwan further alleged that the defendants knew that the decedent's condition was getting progressively worse and that there was an extremely limited time to provide the proper emergency medical treatment to prevent anaphylactic shock. The complaint alleged that the decedent's life could have been saved upon the defendants' arrival because her airway was not completely closed and she was conscious, was alert, and had stable vital signs. Further, the decedent's situation required emergency medical procedures including ensuring that the airway remained open and administering several medications in a particular order. Based on the defendants' training and applicable standard operating procedures, some of the medications should have been

administered within the first 60 seconds after the defendants' arrival. The defendants failed to administer the drugs as emergency medical procedures required, but the decedent's airway did not close for at least five minutes after their arrival. The defendants administered two of the drugs only after the decedent had gone into anaphylactic shock and two other medications at least seven minutes after arriving. The defendants did not administer another medication at all. Kirwan, 349 Ill. App. 3d at 153. The complaint alleged that the delay or failure to administer the drugs violated " 'all applicable emergency medical standards of care and/or standard operating procedures and training' and was 'indicative of an utter disregard of those standards and an utter indifference for the life of [decedent].' " Kirwan, 349 Ill. App. 3d at 153-54. The complaint further alleged that the defendants knew that immediate administration of the drugs was required to prevent the decedent from dying, and the defendants' failure to do so caused the decedent to go into anaphylactic shock and cardiac arrest and was " 'tantamount to a refusal to render emergency treatment.' " Kirwan, 349 Ill. App. 3d at 154. This court held that the complaint sufficiently alleged a claim of willful and wanton conduct to survive a motion to dismiss.

This case easily is distinguishable from Kirwan. First, in Kirwan, the willful-and-wanton-conduct claim was challenged with a motion to dismiss, rather than with a motion for summary judgment, like in this case. Motions for summary judgment and to dismiss are tested under different standards. Second, the complaint in Kirwan alleged facts that the defendants knew of the specific risk to the decedent of not acting quickly, while in this case, plaintiff has failed to allege that defendant had any knowledge, constructive or actual, that would have alerted it to the risk of a ball passing through the protective screen and injuring plaintiff.

Finally, plaintiff's reliance on <u>Palmer v. Chicago Park District</u>, 277 Ill. App. 3d 282 (1995), also is misplaced. In <u>Palmer</u>, the plaintiff sued the Chicago Park District for injuries allegedly caused by willful and wanton conduct. The complaint alleged that, on the date of the incident and for three months prior thereto, a wire mesh fence 30 feet long and 3 feet high had been lying on its side along the edge of a playlot. <u>Palmer</u>, 277 Ill. App. 3d at 284. Sections of the wire fencing had torn and were lying " 'in the form of loops' " on the ground and sidewalk. <u>Palmer</u>, 277 Ill. App. 3d at 284. The fallen fence was supposed to run along the edge of the playlot to protect children from traffic on the adjacent street. On the date of the incident, the plaintiff and his two-year-old daughter were at the park, and the toddler ran through the fallen fence toward the street. The plaintiff chased her, tripped on a section of the fence, and broke his leg. <u>Palmer</u>, 277 Ill. App. 3d at 285. The appellate court held that the complaint stated a claim of willful and wanton conduct, as "[c]ommon sense dictates that [the] defendant's employees, who inspected the playlot daily, simply could not have missed seeing a fence 3 feet high and 30 feet long that had been lying on its side on the westerly edge of the playlot for a three-month period prior to plaintiff's injury." (Emphasis omitted.) <u>Palmer</u>, 277 Ill. App. 3d at 288. In <u>Palmer</u>, the complaint stated a claim of willful and wanton conduct based on the allegation that the defendant did nothing to fix the protective fence even though the defendant's employees inspected the area around the fence daily for three months before the incident. Thus, <u>Palmer</u> illustrates how failing to act despite having actual knowledge of a risk can amount to willful and wanton conduct. In this case, there was no evidence to support plaintiff's allegation that defendant had any knowledge of the risk that plaintiff might be injured by a ball passing through the protective screen; and therefore this case is factually distinguishable.

For the preceding reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

HUTCHINSON and SCHOSTOK, JJ., concur.